# UNITED STATES DISTRICT COURT
### for the
Eastern District of California

**FILED**

**Nov 19, 2025**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Search of ) | |
| ) | |
| A blue/black Apple brand iPhone in a clear, rubber ) case, belonging to Angela Clevenger currently held ) at the Stockton Police Department Investigations ) Building (22 East Weber Ave., Stockton, CA ) 95202) booked under property tag #B204378 as ) Item #10; AND a black Apple iPhone 14 in a black ) rubber Otter box case currently being held in ) evidence at the Stockton ATF Field Office under ) this case as Item #15. ) ) ) | Case No.    2:25-sw-0984 JDP |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**SEE ATTACHMENT A, attached here and incorporated by reference.**

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(a)(1)(A) | Unlawful dealing in firearms |

The application is based on these facts:

**SEE AFFIDAVIT, attached here and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Patrick Kestler
*Applicant's signature*

ATF Task Force Officer Patrick Kestler
*Printed name and title*

Sworn to me and signed telephonically.

Date: _Nov. 19, 2025_

_Judge's signature_

City and state: _Sacramento, California_

_Jeremy D. Peterson, U.S. Magistrate Judge_

_Printed name and title_

ERIC GRANT
United States Attorney
R. ALEX CARDENAS
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Search of: | CASE NO. |
| A blue/black Apple brand iPhone in a clear, rubber case, belonging to Angela Clevenger currently held at the Stockton Police Department Investigations Building (22 East Weber Ave., Stockton, CA 95202) booked under property tag #B204378 as Item #10; AND a black Apple iPhone 14 in a black rubber Otter box case currently being held in evidence at the Stockton ATF Field Office under this case as Item #15. | AFFIDAVIT IN SUPPORT OF SEARCH WARRANT |

I, Patrick Kestler, being first duly sworn, hereby depose and state as follows:

## I.  INTRODUCTION AND AGENT BACKGROUND

1.       I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—specifically, two (2) electronic devices, which are currently in law enforcement possession and are further described in attachment A.

2.       I am a sworn California Peace Officer employed by the City of Stockon Police Department.  I am also duly sworn as a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF).  I have been a sworn California Peace Officer since July of 2014, and a sworn TFO since April of 2024.  As such, I am an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7), in that I am an officer of the United States empowered by law to

1

conduct criminal investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516.  I am

currently assigned to the Stockton Police Department's Special Investigations Section, as the ATF TFO,

working in conjunction with the ATF Stockton Field Office.  In this role, I am responsible for

investigating a variety of criminal matters, to include firearms violations of varying degrees, violent

crime involving the discharge and/or use of firearms, violent criminal enterprises such as criminal street

gangs and organized crime.

        3.      As a California Peace Officer, I have attended and successfully completed a P.O.S.T.

certified Peace Officer Academy at the Napa Valley Community College in Napa, CA, in 2012.  In

addition to this basic academy, I have attended and completed the following formal trainings: eight (8)

hour CVC HIDTA Operational Red Flags webinar course; eight (8) hour CNOA Privately Manufactured

Firearms/Social Media Gun Investigations course; eight (8) hour Glock Armorer's Course; twenty-four

(24) hour Colt M4/M16/AR-15 Rifle Armorers Course; sixteen (16) hour Sacramento County Sheriff's

Office Special Enforcement Detail's Chemical Agents Instructor Course; twenty-four (24) hour CTT

Solutions Red Dot Instructor Course; thirty-two (32) hour New Mexico Tech Tactical Response to

Suicide Bombers Course; sixteen (16) hour Primal Response Training Group's Red Dot Instructor

Course; eighty (80) hour Los Angeles Sheriff's Department Special Enforcement Bureau's (SEB)

Explosive Breaching School; eighty (80) hour International School of Tactical Medicine's Tactical

Medical Course; fifty (50) hour CATO Rappel Master Course; forty (40) hour Alcohol, Tobacco, and

Firearms Basic Undercover School; sixteen (16) hour NTC Diversionary Device Instructor course; sixty

(60) hour CATO Basic Firearms Instructor Course (Carbine, Handgun, Shotgun); eighty (80) hour Basic

SWAT Course; forty (40) hour Advanced Gang Course (2020); forty (40) hour Basic Gang Course

(2019); San Joaquin County Jail Gang Classification Training (2019); an Electronic Surveillance course

(2018) which provides me with the certification required to conduct lawful interception of wire,

electronic digital pager, or electronic cellular telephone communications; forty (40) hour BATI

Interview and Interrogation Techniques Course (2017); and Human Trafficking School (2015).  As part

of my training, I have received extensive instruction in the areas of criminal law, firearms training, rules

of evidence, interview techniques, physical surveillance, interviewing witnesses, confidential

informants, victims and suspects, writing affidavits and executing search warrants, analyzing phone

records obtained from subpoenas, search warrants, pen registers, trap and trace devices, and collecting and processing evidence. In addition, between formal training and on-the-job training, I have received specialized instruction in the extraction of data from digital devices, including cellular telephones, as well as specialized training in firearms technology.

4.      Throughout my law enforcement career, and as part of my participation in this investigation, I have spoken with, worked with, and gained knowledge from numerous experienced federal, state, and local investigators.

5.      During my employment as a Peace Officer, I have participated in numerous criminal investigations to include investigations into the illegal trafficking of firearms. I have also participated in numerous investigations involving the use of federal and state search warrants to collect evidence, including controlled substances, firearms and other types of evidence that document the activities of criminal organizations in both the manufacturing and distribution of controlled substances and weapons. To successfully conduct these investigations, I have utilized a variety of investigative techniques and resources, including physical and electronic surveillance, various types of infiltration (including informants and cooperating sources), pen register and trap and trace devices, telephone tracking devices, mail covers, pole cameras, stationary video recording vehicles, wire intercepts, audio and audio/video recording devices.

6.      I am certified by the California State Attorney General's Office in the practical, technical, and legal aspects of court ordered wiretaps (*see* CA Penal Code § 629.50, *et seq.*). I am familiar with the use of electronic tracking equipment, the use of court-ordered pen registers/trap and trace intercepts and the interception of telephonic communications. I have assisted in fifteen (15) state wiretap investigations (all of which targeted criminal street gang members), four (4) of which I was the affiant. During these investigations my duties included but were not limited to, conducting surveillance on target subjects, monitoring incoming text messages and data messages for criminal activity, monitoring telephonic intercepts for criminal activity, monitoring PEN register and location data to further my obtainment of evidence in proving criminal activity, conducting uniformed enforcement on target subjects to make arrests, detentions, and/or in other manners deter criminal activity by creating a uniformed presence.

7.      I have qualified and subsequently testified as an expert in criminal street gangs in San Joaquin County Superior Courts on nineteen (19) occasions.  I have qualified and subsequently testified as an expert in firearms in San Joaquin County Superior Courts on two (2) occasions.

8.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers, agents, authorized personnel, witnesses, and suspects.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## II.      IDENTIFICATION OF THE DEVICES TO BE EXAMINED

9.      The property to be searched are two (2) electronic devices seized from CHRISTIAN CEPHAS-HUBBARD and ANGELA CLEVENGER on March 26, 2025.  These devices, collectively referred to as the "**SUBJECT DEVICES**," are further described as:

- A blue/black Apple brand iPhone in a clear, rubber case, belonging to Angela CLEVENGER, currently held at the Stockton Police Department Investigations Building at 22 East Weber Ave., Stockton, CA 95202, and booked under property tag #B204378 as Item #10, seized from CLEVENGER's person on March 26, 2025; and

- A black Apple iPhone 14 in a black rubber Otter box case, currently being held in evidence at the Stockton ATF Field Office as Item #15, seized from CEPHAS-HUBBARD's person during the interdiction of several firearms in Twin Falls, Idaho.

10.      This warrant would authorize the forensic examination of the **SUBJECT DEVICES** for the purpose of identifying electronically stored data particularly described in Attachment B.

11.      The **SUBJECT DEVICES** are currently in the lawful possession of the Stockton Police Department and the local ATF Stockton Office (respectively).  CLEVENGER's device was seized by your Affiant, on March 26, 2025, pursuant to a state issued search warrant—issued by San Joaquin County Superior Court Judge Barbara Kronlund.  CEPHAS-HUBBARD's device was seized by ATF Special Agent (SA) Payton Smith on March 26, 2025, in Twin Falls, Idaho.  Based on my training and experience, I know that the **SUBJECT DEVICES** have been stored in a manner in which the contents are, to the extent material to this investigation, remain in substantially the same state as it was when law enforcement first took possession of the **SUBJECT DEVICES**.

### III.    <u>PROBABLE CAUSE</u>

12.    Your Affiant is currently assigned as the Stockton Police Department's TFO with the ATF.  As such, I work closely with an Intelligence Research Specialist (IRS) from the ATF, Steven Cole.

13.    On January 02, 2025, Boise (ID) ATF Investigative Analyst (IA) Joel Dias contacted Stockton ATF IRS Cole and advised that five firearms that were recovered in Stockton, CA, had originally been sold in Idaho to one person.  ATF Boise was investigating those purchases.

14.    On January 07, 2025, IA Dias again contacted IRS Cole and advised that the purchaser of five of the firearms recovered in Stockton, CA, was a person named Christian CEPHAS-HUBBARD.

15.    On March 10, 2025, IRS Cole requested all recent ATF Form 4473's for CEPHAS-HUBBARD's firearm purchases in Idaho from Boise Field Office Special Agent (SA) Kenneth Hipp.  A Form 4473 is a firearm transaction record form used to document the sale or transfer of firearms for all Federal Firearms Licensed (FFL) dealers in the United States.  The Form 4473 furthered this investigation by providing information about CEPHAS-HUBBARD's firearms purchases.

16.    For example, on July 31, 2024, CEPHAS-HUBBARD purchased three firearms from Homestead Tactical, an FFL located at 758 Falls Avenue, Twin Falls, ID 83301.  The firearms purchased were: two (2) Century Arms Model VSKA Micro Dracos; and one (1) Glock model 23.

17.    Then, on August 08, 2024, CEPHAS-HUBBARD purchased seven (7) firearms from two (2) different FFLs.  The first four (4) firearms were purchased from Red's Trading Post, an FFL located at 203 5th Avenue, Twin Falls, ID 83301.  The firearms purchased were: two (2) Glock model 30s; one (1) Glock model 45; and one (1) Glock model 27.  The next three (3) firearms were purchased from Homestead Tactical, an FFL located at 758 Falls Avenue, Twin Falls, ID 83301.  The firearms purchased were: one (1) Glock model 23; one (1) Glock model 30; and one (1) Glock model 45.

18.    On December 30, 2024, CEPHAS-HUBBARD again purchased three (3) firearms from Homestead Tactical.  The firearms purchased were: one (1) Glock model 26; and two (2) Glock model 27s.

19.    For all four purchases, per the ATF Form 4473, CEPHAS-HUBBARD provided an Idaho

Driver's License—number AD016172V—with his address listed as 701 W Midway Street, Filer, Idaho. CEPHAS-HUBBARD signed each ATF Form 4473 under the "penalty of perjury" attesting that all of the information he provided in the Form was true, correct and complete.

20.    Thereafter, five (5) of the aforementioned firearms purchased by CEPHAS-HUBBARD were recovered through a criminal investigation. Those firearms were recovered in possession of persons that were not CEPHAS-HUBBARD, nor had the firearms been legally transferred to anyone in possession of the firearms.

21.    For example, on August 15, 2024, your Affiant assisted in serving a search warrant at 2149 Knickerbocker Drive in Stockton, California. There, a Century Arms International Model Micro Draco 7.62x39 pistol, with Serial number USD002308, was recovered during the search. That firearm was not California compliant pursuant to CA Penal Code § 30605(a) and was considered an assault weapon. There was no legal transfer of that firearm and the persons associated with that firearm were arrested for firearms related charges.

22.    The recovered Draco pistol listed above was purchased by CEPHAS-HUBBARD at Homestead Tactical in Twin Falls, Idaho, on July 31, 2024.

23.    Then, on August 15, 2024, your Affiant assisted in serving a search warrant at 4304 Manchester Avenue, 21, in Stockton, California. There, a Glock model 30 Gen 4, with Serial number YMP912, and a Glock model 45, with Serial number BLHM570, were recovered during the search. There was no legal transfer of these firearms and the persons associated with these firearms were arrested for firearms related charges.

24.    Both Glock pistols listed above were purchased by CEPHAS-HUBBARD at Homestead Tactical in Twin Falls, Idaho, on August 08, 2024.

25.    Also, on August 15, 2024, law enforcement served a search warrant at 6408 Morgan Place, 229, in Stockton, California. There, a Glock model 45, with Serial number BLHM568, and a Glock model 27 Gen 4, with Serial number AFCH096, were recovered during the search. There was no legal transfer of these firearms and the persons associated with these firearms were arrested for firearms related charges.

26.    Both Glock pistols listed above were purchased by CEPHAS-HUBBARD at Red's

Trading Post in Twin Falls, Idaho, on August 08, 2024.

27.     CEPHAS-HUBBARD purchased ten (10) firearms on two dates—July 31, 2024 and August 08, 2024.  From those purchases, five (5) of the ten (10) firearms were recovered on August 15, 2024, at three separate locations.  None of the recovered firearms had been transferred legally.  Based on training and experience, I believe that the recovery of those firearms at three different locations, roughly two weeks after being purchased by CEPHAS-HUBBARD, is consistent with illegal firearms trafficking.

28.     In conducting follow-up for this investigation, I found that CEPHAS-HUBBARD's last documented contact with the Stockton Police Department was on October 30, 2020.  At that time, CEPHAS-HUBBARD provided his address as 2484 Burlington Place in Stockton, CA.  CEPHAS-HUBBARD was contacted with a female named Angela CLEVENGER.  From that contact, CLEVENGER referred to CEPHAS-HUBBARD as her boyfriend, with CEPHAS-HUBBARD affirming that the two were in a romantic relationship.

29.     I also searched social media platforms for an account associated with CLEVENGER.  I found an Instagram account with username "@lalaluv."  I believe this account is being (or was being) utilized by CLEVENGER based on the profile photo showing CLEVENGER, and three of the six photos posted to the account being of CLEVENGER.  One of the photos was a photo of CLEVENGER with CEPHAS-HUBBARD.  The caption on the photo read, "The beach and his arms are my happy place," with multiple heart emojis.  The photo was posted to the account on February 05, 2021.  The most recent photo posted to CLEVENGER's account was on May 14, 2024.

30.     IRS Cole ran CLEVENGER in California Department of Justice's Automated Firearms System to search for any purchased firearms.  The Automated Firearms System is a database that records all of the sales/transfers/recoveries/theft of firearms in the State of California.  IRS Cole found that on April 05, 2012, CLEVENGER purchased a 9mm Glock 19, with Serial number SGZ048, in Stockton, California.  On August 16, 2020, CLEVENGER's Glock was recovered in the possession of Kyle Jefferson in San Leandro, California.  At the time of recovery, Jefferson was not a prohibited person, but the firearm was not registered to Jefferson.  As such, the firearm had been illegally transferred to Jefferson.  Additionally, the firearm had not been reported stolen by CLEVENGER before

1  or after the recovery.  Based on training and experience, I know that failure to report a firearm stolen in

2  California is a violation of CA Penal Code § 25250.

3        31.    CEPHAS-HUBBARD's most recent address on file with the California Department of

4  Motor Vehicles (DMV) is 2484 Burlington Place, Stockton, CA 95205, as of March 08, 2019.

5  CEPHAS-HUBBARD's California Driver's License expired as of October 24, 2020.

6        32.    On March 10, 2025, IRS Cole contacted ATF IRS Victor Williams, who has access to

7  information related to the Employment Development Department (EDD).  The EDD is a state agency

8  that administers Unemployment Insurance, State Disability Insurance, and Paid Family Leave.  EDD

9  also collects/audits payroll taxes and manages the state's workforce development programs.  IRS Cole

10  requested EDD information related to CEPHAS-HUBBARD.  On March 11, 2025, IRS Williams

11  provided the requested EDD information.  The EDD paperwork showed that CEPHAS-HUBBARD's

12  address is 2484 Burlington, Stockton, California, as of August 27, 2020.  CEPHAS-HUBBARD had six

13  places of employment.  None of CEPHAS-HUBBARD's places of employment were in Idaho.

14        33.    IRS Cole contacted the Special Agent Supervisor (SAS) for the California Department of

15  Justice's Bureau of Firearms, Salvador Gonzalez, and requested to see if CEPHAS-HUBBARD or

16  CLEVENGER had a State of California Dealers license that allows them to import or sell firearms in the

17  State of California.  SAS Gonzales determined that neither CEPHAS-HUBBARD nor CLEVENGER

18  had any "Dealers Licenses" to either import or sell firearms in California.  Per Stockton ATF Industries

19  Operations Investigator (IOI) Roger Isquierdo, CEPHAS-HUBBARD does not possess a Federal

20  Firearms License (FFL) allowing him to legally sell firearms.

21        34.    Further follow-up revealed that CLEVENGER's last documented contact with the

22  Stockton Police Department was on October 30, 2020.  During that contact CLEVENGER provided her

23  address as 2629 Grand Canal Boulevard, Stockton, CA.  CLEVENGER's most recent address on file

24  with the California DMV is 2629 Grand Canal Boulevard, Stockton, CA as of May 25, 2017.

25  CLEVENGER's California Driver's License is still valid and is set to expire in 2027.

26        35.    IRS Cole contacted United States Postal Inspector Jedediah Tyler and to see where

27  CEPHAS-HUBBARD and CLEVENGER have been receiving mail.  Postal Inspector Tyler advised that

28  CEPHAS-HUBBARD and CLEVENGER have received mail at 19925 Big Bend Drive, Cottonwood,

CA.  The last piece of mail delivered to CEPHAS-HUBBARD at this address was on November 29, 2024.  The last piece of mail delivered to CLEVENGER at this address was on March 06, 2025.

36.     IRS Cole then conducted a search of CEPHAS-HUBBARD and CLEVENGER in the program "TLO."  TLO is an open-source database compiling public and other open-source information about individuals such as addresses and phone numbers.  TLO revealed that 19925 Big Bend Drive, Cottonwood, CA, was the address most recently associated to CEPHAS-HUBBARD as of September 11, 2024.  TLO revealed that 19925 Big Bend Drive, Cottonwood, CA, was the address most recently associated with CLEVENGER, as of April 30, 2024.

37.     I searched the California DMV database for vehicles registered to CEPHAS-HUBBARD and found none.  I searched the California DMV database for vehicles registered to CLEVENGER and found that CLEVENGER has at least two currently registered vehicles: a 2016 Honda with California license plate number 7RKW815, expiring March 16, 2026, and a 2008 Nissan with California license plate number 6WQK008, expiring July 28, 2025.  Both of these vehicles are registered only to CLEVENGER at 19925 Big Bend Drive, Cottonwood, CA.

38.     We received information from IA Dias that CLEVENGER also had a registered 2003 black Toyota Solara out of Idaho bearing Idaho license plate number 2TS774U.  The registration on this vehicle expired on October 31, 2023.

39.     I conducted a search of all three vehicles in the Flock license plate reading system.  I ran the search from January 01, 2025 to March 24, 2025.  I found that the Nissan with California license plate number 6WQK008 has not scanned across a Flock LPR camera in California during this time.  I found that the Honda with California license plate number 7RKW815 has scanned in California on Flock LPR cameras approximately ninety-three (93) times.  A majority of these scans have been in Anderson, CA.  I found that the Toyota with Idaho license plate number 2TS774U has not scanned across a Flock LPR camera in California during this time.

40.     On March 19, 2025, IRS Cole received a phone call from ATF SA Hipp.  SA Hipp advised that CEPHAS-HUBBARD had seven (7) firearms shipped to Homestead Tactical in Twin Falls, ID, that he was purchasing.  SA Hipp advised that CEPHAS-HUBBARD had ordered five (5) Glocks and two (2) AK style firearms.  SA Hipp provided a contact number for Homestead Tactical.

41.     IRS Cole contacted Homestead Tactical and spoke to an employee who advised that "Christian" had placed an order for seven (7) firearms.  The employee advised that the purchase was being made via "LE Trade Ins" and that the customer "Christian Cephas" was wanting to use Homestead Tactical as the point Federal Firearms Licensed dealer to facilitate the purchase/transfer to "Christian."

42.     IRS Cole asked the Homestead Tactical employee to contact law enforcement when they received the shipment and to contact us prior to the transfer of the firearms.  The employee advised that they would.

43.     Later the same day, the Homestead Tactical employee called and advised IRS Cole that the below listed (five) Glock pistols were sent "next day air" and had just arrived at Homestead Tactical. the attached inventory invoice sheet was CEPHAS-HUBBARD's name, with an address of 701 W Midway St, Filer, Idaho, cell phone number **(208) 320-4090**, and email address Christiancephus19@gmail.com.

44.     The firearms were scheduled to be picked up by CEPHAS-HUBBARD on March 26, 2025, in Idaho at Homestead Tactical.

45.     On March 20, 2025, IRS Cole used Motorola's License Plate Reading system to search for CLEVENGER's black Toyota Solara with Idaho license plate number 2TS774U.  Over the past year—from March 24, 2024 through March 24, 2025—the expired Toyota Solara has scanned traveling/stationary in California approximately ninety-seven (97) times.  These captures are also spread out over the time frame referenced, indicative of the vehicle regularly being in California.

46.     Over the last eight (8) months, CEPHAS-HUBBARD has purchased nineteen (19) firearms across five (5) separate purchases.

47.     Across all known, documented, purchases listed in this affidavit of CEPHAS-HUBBARD purchasing firearms from Homestead Tactical in Twin Falls, ID, he provided his contact telephone number as **(208) 320-4090**.  During the ongoing transaction with Homestead Tactical an employee confirmed that CEPHAS-HUBBARD has called the shop using telephone number **(208) 320-4090**.

48.     With the aforementioned information, on March 24, 2025, you Affiant authored a search warrant for the installation and monitoring of a pen register trap and trace, as well as a request for call detail records, for the telephone number **(208) 320-4090** being utilized by CEPHAS-HUBBARD.  The

warrant was issued by the Honorable Judge Soldati of the San Joaquin County Superior Court the same day.

49.    With the aforementioned information, on March 25, 2025, I authored a search warrant for the residence at 19925 Big Bend Drive, Cottonwood, CA 96022.  The warrant was issued by the Honorable Judge Kronlund of the San Joaquin County Superior Court the same day.

50.    Pursuant to the Pen Register/Trap and Trace search warrant for CEPHAS-HUBBARD's telephone number, I received ongoing location pings for his cellular device.

51.    On March 25, 2025, I continued to monitor the location pings for CEPHAS-HUBBARD.  Around 9:00 p.m., I noticed CEPHAS-HUBBARD's pings moving south towards Chico, CA.  Over the next several hours, into the morning of March 26, 2025, I monitored the pings as they traveled south to around Yuba City, then east through Grass Valley, east through Reno (NV), east through Winnemucca (NV), to Wells (NV), then northbound through Jackpot (NV), into Idaho, through Amsterdam (ID), into Twin Falls (ID).

52.    Along the road, ATF SA Payton Smith observed who he believed to be CEPHAS-HUBBARD in a blue Toyota RAV 4 with California license plate number 9JJH324, traveling towards Twin Falls.  SA Smith along with other agents followed CEPHAS-HUBBARD into Twin Falls where they eventually stopped following him after he passed Homestead Tactical.  SA Smith and other agents then set up static surveillance on the FFL.

53.    At approximately 11:34 a.m., on March 26, 2025, agents observed CEPHAS-HUBBARD arrive at the FFL in the blue Toyota, park in the parking lot and enter the store.  Agents waited until CEPHAS-HUBBARD completed the transaction before they detained him, seized his firearms, searched his vehicle, seized his phone, and interviewed him.  SA Smith advised he retrieved CEPHAS-HUBBARD's phone from his person, located in his pants pocket.  The phone was a black Apple iPhone 14 in a black rubber Otter box case.

54.    SA Smith obtained information from CEPHAS-HUBBARD about his residence in Cottonwood.  SA Smith advised that CEPHAS-HUBBARD said his girlfriend, mother-in-law, several children, and several dogs were at the residence.  CEPHAS-HUBBARD ultimately requested to have his lawyer present during any further questioning.

55.     ATF Agents from the Stockton field office, including myself, along with ATF Agents from the San Francisco field office, and officers with the Redding District California Highway Patrol unit and Investigative Services Unit (ISU), assisted in the service of the search warrant at the Cottonwood, CA, address.

56.     Following CEPHAS-HUBBARD's detention and confirmation about the Cottonwood, CA house, we responded to the house to serve the warrant.  I was assigned as part of the entry team for this warrant.  I donned a police vest clearly marked with the word "POLICE" on the front and back, I also had my Stockton Police Department badge visible at my waist area.  CHP assisted with surrounding the residence while Stockton Police Department Detective Jeremey Coppock and I, along with other ATF Agents, approached the front door.  An agent knocked at the front door, announced our presence and that we had a search warrant.  The door opened within seconds.  I heard agents tell people inside to come out and that we had a warrant.  Several persons came from inside the residence, out to the front yard, where they stood by with a CHP officer.

57.     Agents then made entry into the house with Det. Coppock.  The persons detained from inside the residence were: Angela CLEVENGER; S.A.; B.S.; I.S.; A.S.; K.C.; and C.S.

58.     For this search warrant I was assigned as the "finder."  The role of the finder is to document the location of any evidence located during the search, as well as direct the collection of such evidence.  Other members of the team were instructed to inform me of any evidence that was located.

59.     The following items were located inside the residence, in the following locations.  The following items are numbered referenced to their item number reflected on the property tag sheet.

a)      Within the living room closet: Item #3 - (1) rifle magazine; Item #4 - (1) grey plastic ammo container containing miscellaneous brand and caliber ammunition; Item #5 - (1) live cartridge of Federal .45 caliber training ammunition located within another ammo container; Item #6 - (1) MFT brand 5.56x45 rifle magazine located in a plastic container; Item #7 - (4) boxes of ammunition: two (2) boxes of .45 auto ammunition and two (2) boxes of 5.7x28 mm ammunition located in a plastic container; Item #9 - (1) box containing six rounds of Hornady SW .40 caliber ammunition located in a blue bag.

ATF agents located an Idaho Driver's License application through the Idaho Transport

Department for CEPHAS-HUBBARD.  Address on the application was listed as 701 Midway Street, Filer, ID.

b)    Within the southeast bedroom: Item #1 - (1) Psilocybin mushroom with packaging (2.72 grams net weight total) and NO CASE NARCO, located on the north wall bookcase shelf; Item #15 - (1) black Plano rifle case, located on the top shelf of the bedroom closet; In Item #15: Item #2 - (1) Winchester Wildcat .22 caliber semi-automatic rifle, serial number TF614-21M29627 (no record on file); in Item #15: Item #11 - (1) black Ruger BX25 .22 caliber firearm "banana" style magazine loaded with sixteen (16) live .22 caliber cartridges; in Item #15: Item #12 - (16) live cartridges of .22 caliber ammunition from item #11; in Item #15: Item #13 -  (1) Winchester stock .22 caliber rifle magazine loaded with ten (1) live .22 caliber cartridges; in Item #15: Item #14 - (10) live cartridges of .22 caliber ammunition from item #13.

c)    Outside, front yard: Item #8 - (2) 9 mm caliber, 10 round capacity, Glock brand firearm magazines, located in a Glock box outside on a bench.

60.    When CLEVENGER exited the residence, she had a cellular phone in her waistband area. A CHP officer removed the phone and retained it.  This phone was eventually seized and retained as evidence.  The phone was a blue/black Apple iPhone in a clear, rubber case belonging to CLEVENGER. CLEVENGER voluntarily provided the passcode to the Apple iPhone.

61.    CLEVENGER was interviewed by Det. Coppock, IRS Cole, ATF Sexton, ATF Kern, and your Affiant.  CLEVENGER provided information that supported CEPHAS-HUBBARD's illegal dealings in firearms.  For example, CLEVENGER showed us transactions on her phone, through payment applications, that she referenced as payment received on behalf of firearms sold by CEPHAS-HUBBARD.  CLEVENGER's information was limited but acknowledged details that supported the criminal investigation into CEPHAS-HUBBARD's activities.  Law enforcement seized CLEVENGER's phone from her person pursuant to the state search warrant.

## Training and Experience Regarding Firearms

62.    I know that individuals who are involved in the illegal possession and distribution of firearms often use cellular telephones to communicate with one another, either by voice or text message. The information stored in a mobile telephone used by illegal firearm traffickers often contains evidence

of their criminal activities.  Cellular telephones also contain in their memory text messages sent, received, and drafted by the mobile telephone user.  The text message history of a cellular telephone can contain evidence of illegal firearm possession, trafficking and/or manufacturing because it shows the communications or planned communications of a firearm possessor, trafficker, and/or manufacturer and the telephone numbers of those with whom the illegal firearm possessor, trafficker, and/or manufacturer communicated or intended to communicate.

63.     Illegal firearms traffickers sometimes leave voice messages for each other, and this is evidence both of their mutual association and possibly their joint criminal activity.  Cellular telephones can also contain other user-entered data files such as "to-do" lists, which can provide evidence of crime when used by illegal firearms traffickers.  Cellular telephones can also contain photographic data files, which can be evidence of criminal activity if the user who was in possession of firearms took pictures of evidence of crime.  Cellular telephone companies also store the data described in this paragraph on their own servers and associate the data with users' mobile telephones.

64.     Based on my training and experience, I know that people who are involved in the illegal possession and trafficking of firearms often maintain photographs or videos of their firearms, ammunition, parts, and accessories on their cellular telephones, including photographs and/or videos of the possessor holding the firearms.

65.     I know that individuals involved in the illegal distribution of firearms tend to maintain a continual chain of communication with suppliers, lookouts and co-conspirators to facilitate their criminal activities.  I also know that these communications are primarily conducted by cellular telephones.  I know that people who negotiate the sale of firearms will often use cell phones to contact co-conspirators to obtain additional quantities of firearms.  I also know that photos of firearms and currency are often stored on such devices.  Cellular phones can also supply historical information about the dates, times, duration, number, destination, and location of telephone calls, messages, photographs, video, audio, and other information processed or stored by the cellular telephone.

66.     It has been my experience that people engaged in criminal activities utilize cellular telephones to maintain contact, either by telephone calls and/or text messaging, with close associates and people they trust, to include associates in the criminal activities, and that they carry these cellular

telephones with them during the course of their criminal activities. Moreover, it has been my experience that people engaged in such criminal activities utilize these cellular telephones to take photographs and videos of themselves, their criminal associates, and other items related to their criminal activities, in some cases from the proceeds from their criminal activities. Relating to the ever-evolving level of cellular telephone technology, particularly increased storage capacity, through my training and experience, I know that cellular telephones can regularly store contacts, call logs, text messages, multimedia files, voicemail messages, and location/GPS data months and in some cases years from the date of the phone's activation.

67. Those who are involved in illegal firearm trafficking often, intentionally or unintentionally, retain paperwork and evidence indicating the source of the firearms whether it be by purchase, theft, or other means.

68. As noted in the probable cause section of this affidavit, CEPHAS-HUBBARD (at a minimum) utilized his cellular phone to communicate with firearm stores to facilitate his straw purchasing, and in and of itself is evidentiary to document the call logs of calls made to/from the stores.

69. Based on my training and experience, I know that criminals often involve their significant others into their criminal activities. I know that even without full inclusion into certain criminal activities, a criminal's significant other is often privy to these activities in one form or another. Even without full knowledge of the activities, I know there is often partial inclusion by a significant other often in the form of transporting/obtaining/delivering product, transporting/receiving money, communicating as a "middleman," or other things of this nature.

70. In this particular investigation, based on other Stockton Police Department investigations, I know that CLEVENGER and CEPHAS-HUBBARD have been romantically involved since at least 2020. Based on statements made by CLEVENGER, I also know that she has knowledge of CEPHAS-HUBBARD's involvement in the illegal sales of firearms and did receive payment to her phone in part on one of the deals. I also know it is common for suspects, particularly those that may be on the verge of being implicated as a suspect, to provide "half-truths" in their cooperation with law enforcement. This means that a particular person may provide only partial evidentiary information to minimize their own criminal involvement and maximize another's. I believe it is likely that additional evidence, under

than what was provided to investigators by CLEVENGER, will be located within the contents of CLEVENGER's phone, further implicating CEPHAS-HUBBARD in his illegal activities, and CLEVENGER as well.

## IV.    TECHNICAL TERMS

71.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a)    Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b)    Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c)    Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players

16

can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d)      GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.  Each satellite contains an extremely accurate clock.  Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.  These signals are sent by radio, using specifications that are publicly available.  A GPS antenna on Earth can receive those signals.  When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e)      PDA:  A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.  PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f)      IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the

range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static-that is, long-term-IP addresses, while other computers have dynamic-that is, frequently changed-IP addresses.

g)      Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

72.      Based on my training, experience, and research, I know that the **SUBJECT DEVICES** have capabilities that allow it to serve as serve as a wireless telephone, digital camera, GPS navigation device, and PDA, and a means to access the internet. I also know that the **SUBJECT DEVICES** are capable of downloading applications such as Instagram and other social media applications which may be used to send messages. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## V.      ELECTRONIC STORAGE AND FORENSIC ANALYSIS

73.      Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

74.      Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described in the warrant, but also forensic evidence that establishes how the **SUBJECT DEVICES** were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the **SUBJECT DEVICES** because:

a)      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b)      Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c)      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d)      The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e)      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

75.      Nature of examination.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

76.      Manner of execution.  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

///

///

///

# VI.    **AUTHORIZATION REQUEST**

77.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **SUBJECT DEVICES** described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

/s/ Patrick Kestler

Patrick Kestler
ATF Task Force Officer

Subscribed and sworn to via telephone me on:    Nov. 19, 2025

HONORABLE JEREMY D. PETERSON
U.S. MAGISTRATE JUDGE

/s/ R. Alex Cardenas
Approved as to form by AUSA R. Alex Cardenas

## ATTACHMENT A

The property to be searched are the electronic devices seized from CHRISTIAN CEPHAS-HUBBARD and ANGELA CLEVENGER on March 26, 2025.  These devices are collectively referred to as the "**SUBJECT DEVICES**" and are further described as follows:

- A blue/black Apple brand iPhone in a clear, rubber case, belonging to Angela Clevenger currently held at the Stockton Police Department Investigations Building located at 22 East Weber Ave., Stockton, CA 95202, and booked under property tag #B204378 as Item #10

- A black Apple iPhone 14 in a black rubber Otter box case currently being held in evidence at the Stockton ATF Field Office under Item #15.

This warrant authorizes the forensic examination of the **SUBJECT DEVICES** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the **SUBJECT DEVICES** described in Attachment A that relate to the following violations: 18 U.S.C. § 922(a)(1)(A)—Unlawful dealing in firearms—collectively referred to here as the "Target Offenses," involving CHRISTIAN CEPHAS-HUBBARD and ANGELA CLEVENGER from July 1, 2024, to the date of the search warrant on March 26, 2025, including:

   a.   Records of calls and other communications on the **SUBJECT DEVICES**, including but not limited to call logs, audio files, text messages, multi-media messages, emails, and private chat logs;

   b.   Records relating to contact lists, address books, telephone notes, appointment books, task lists, social media user information, and calendars;

   c.   Records relating to firearm and/or ammunition possession, purchase, sale, and/or use;

   d.   Records of any of the Target Subjects associating with one another, or other co-conspirators, or that are otherwise helpful to identify those individuals that committed or are committing the Target Offenses;

   e.   Records relating to the location of Target Subjects or other co-conspirators at the times they are involved in planning, executing or covering up the commission of the Target Offense, or are in possession of firearms, or ammunition

   f.   Records of the times the **SUBJECT DEVICES** were used;

   g.   Records relating to Global Positioning Satellite (GPS) entries, Internet Protocol Connections, and location entries, to include Cell Tower and Wi-Fi entries;

   h.   Evidence indicating how and when the **SUBJECT DEVICES** were accessed or used to determine the chronological context of access, use, and events relating to the Target Offenses and to the user;

   i.   Evidence indicating the **SUBJECT DEVICES'** user's state of mind as it relates to the Target Offenses; and

   j.   Contextual information necessary to understand the evidence described in this attachment.

   k.   All evidence/records as aforementioned retained within any application on the SUBJECT DEVICES (including social media applications such as Instagram, Facebook, and SnapChat).

2.      Evidence of user attribution showing who used or owned the **SUBJECT DEVICES** at the time the things described in this warrant were created, edited, or deleted, such as

logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat" or instant messaging logs, photographs, images, videos, audio files, and correspondence.

     3.     Passwords, encryption keys, and other access devices that may be necessary to access the **SUBJECT DEVICES**;

     As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

     This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | | |
|---|---|---|
| In the Matter of the Search of<br>A blue/black Apple brand iPhone in a clear, rubber<br>case, belonging to Angela Clevenger currently held at<br>the Stockton Police Department Investigations<br>Building (22 East Weber Ave., Stockton, CA 95202)<br>booked under property tag #B204378 as Item #10;<br>AND a black Apple iPhone 14 in a black rubber Otter<br>box case currently being held in evidence at the<br>Stockton ATF Field Office under this case as Item<br>#15. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.     2:25-sw-0984 JDP |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached here and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached here and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before ___December 2, 2025___ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐     Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐   for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     ___Nov. 19, 2025 at 3:56 p.m.___

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

*Judge's signature*

City and state:    Sacramento, California                    Jeremy D. Peterson, U.S. Magistrate Judge

*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____          _____

Signature of Judge                                                                          Date

## ATTACHMENT A

The property to be searched are the electronic devices seized from CHRISTIAN CEPHAS-HUBBARD and ANGELA CLEVENGER on March 26, 2025.  These devices are collectively referred to as the "**SUBJECT DEVICES**" and are further described as follows:

- A blue/black Apple brand iPhone in a clear, rubber case, belonging to Angela Clevenger currently held at the Stockton Police Department Investigations Building located at 22 East Weber Ave., Stockton, CA 95202, and booked under property tag #B204378 as Item #10

- A black Apple iPhone 14 in a black rubber Otter box case currently being held in evidence at the Stockton ATF Field Office under Item #15.

This warrant authorizes the forensic examination of the **SUBJECT DEVICES** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.    All records on the **SUBJECT DEVICES** described in Attachment A that relate to the following violations: 18 U.S.C. § 922(a)(1)(A)—Unlawful dealing in firearms—collectively referred to here as the "Target Offenses," involving CHRISTIAN CEPHAS-HUBBARD and ANGELA CLEVENGER from July 1, 2024, to the date of the search warrant on March 26, 2025, including:

    a.    Records of calls and other communications on the **SUBJECT DEVICES**, including but not limited to call logs, audio files, text messages, multi-media messages, emails, and private chat logs;

    b.    Records relating to contact lists, address books, telephone notes, appointment books, task lists, social media user information, and calendars;

    c.    Records relating to firearm and/or ammunition possession, purchase, sale, and/or use;

    d.    Records of any of the Target Subjects associating with one another, or other co-conspirators, or that are otherwise helpful to identify those individuals that committed or are committing the Target Offenses;

    e.    Records relating to the location of Target Subjects or other co-conspirators at the times they are involved in planning, executing or covering up the commission of the Target Offense, or are in possession of firearms, or ammunition

    f.    Records of the times the **SUBJECT DEVICES** were used;

    g.    Records relating to Global Positioning Satellite (GPS) entries, Internet Protocol Connections, and location entries, to include Cell Tower and Wi-Fi entries;

    h.    Evidence indicating how and when the **SUBJECT DEVICES** were accessed or used to determine the chronological context of access, use, and events relating to the Target Offenses and to the user;

    i.    Evidence indicating the **SUBJECT DEVICES'** user's state of mind as it relates to the Target Offenses; and

    j.    Contextual information necessary to understand the evidence described in this attachment.

    k.    All evidence/records as aforementioned retained within any application on the SUBJECT DEVICES (including social media applications such as Instagram, Facebook, and SnapChat).

2.    Evidence of user attribution showing who used or owned the **SUBJECT DEVICES** at the time the things described in this warrant were created, edited, or deleted, such as

logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat" or instant messaging logs, photographs, images, videos, audio files, and correspondence.

3.      Passwords, encryption keys, and other access devices that may be necessary to access the **SUBJECT DEVICES**;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.